*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. NOFFSINGER, Minor.

UNPUBLISHED
October 15, 2019

No. 331108
Livingston Circuit Court
Family Division
LC No. 2014-014680-NA

ON REMAND

Before: RONAYNE KRAUSE, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

Respondent-father challenged the circuit court's assumption of jurisdiction over his daughter, AN, following the termination of his parental rights. Based on standing precedent, we rejected respondent's challenge as a prohibited collateral attack. The Michigan Supreme Court subsequently overturned that precedent and amended the court rules, permitting the current respondent's appellate challenge. However, the circuit court properly assumed jurisdiction in this case and respondent is not entitled to relief from that order. We again affirm.

## I. BACKGROUND

The Department of Health and Human Services (DHHS) filed a petition to take jurisdiction over respondent-father's daughter, AN, based on his history of alcohol abuse and domestic violence and the prior termination of his parental rights to three older children. *In re Noffsinger*, unpublished opinion of the Court of Appeals, issued November 29, 2016 (Docket No. 331108), slip op at 2 (*Noffsinger I*). Respondent initially fought the petition, but eventually submitted to substance abuse and psychological evaluations. *Id*. at 2-3. Thereafter, respondent agreed to plead to grounds for jurisdiction. Specifically, he admitted that he previously lost parental rights to other children, was convicted in 2009 for assaulting AN's mother, and was recently assessed as meeting the criteria for "alcohol dependence" and yet still had not initiated substance abuse treatment. *Id*. at 3.

During the plea proceeding, the circuit court advised respondent of the rights he was waiving by pleading to grounds for jurisdiction and asked a series of questions to ensure that respondent's plea was voluntary. *Id*. at 3-5. The court also provided a written advice of rights

-1-

form. However, the court did not advise respondent regarding his limited right to appeal the adjudicative order and respondent did not attempt to challenge the adjudication until he appealed to this Court following the termination decision. *Id*. at 8. Such attacks were deemed "collateral" under *In re Hatcher*, 443 Mich 426; 505 NW2d 834 (1993), and were therefore barred. *Noffsinger I*, slip op at 5. We noted that MCR 3.971 through MCR 3.974 did not require a court to advise a parent at the adjudicative phase that his or her right to appeal the jurisdictional decision must be taken following the court's initial dispositional order. *Noffsinger I*, slip op at 8. Accordingly we held:

> Ultimately, we find insufficient ground to extend the law to nullify a circuit court's jurisdiction in a child protective proceeding when the court fails to notify the parent that the jurisdictional order must be directly appealed. To date, there is no Supreme Court decision declaring a constitutional right to such notice . . . . [Various unpublished Court of Appeals opinions] permit collateral attacks in the face of a violation of an *existing* court rule mandate. The Supreme Court may wish to consider amending MCR 3.971(B) and MCR 3.972 to require appellate right notifications at the adjudicative phase. But we decline to impose a duty on all courts in this opinion. Respondent pleaded to jurisdiction and in the absence of constitutional error or a court rule violation, is bound by that decision. [*Noffsinger I*, slip op 8.]

## II. SUPREME COURT

Respondent filed an application for leave to appeal in the Supreme Court, which held the application in abeyance pending its resolution of *In re Ferranti, Minor* (Docket No. 157907-8). *In re Noffsinger*, 913 NW2d 329 (2018). In *In re Ferranti*, ___ Mich ___; ___ NW2d ___ (2019), slip op at 1, the Supreme Court overruled *Hatcher*'s holding that a posttermination appellate challenge to an adjudicative order is a prohibited collateral attack. "*Hatcher* made a foundational mistake," the Court held, as "it erroneously applied the rule from *Jackson City Bank & Trust Co v Frederick*, 271 Mich 538; 260 NW 908 (1935)—that a court's exercise of jurisdiction cannot be collaterally attacked in a second proceeding—to what is a single, continual proceeding." *Ferranti*, slip op at 15. The Court continued:

> *Hatcher* applied the collateral-bar rule to conclude that a respondent who appeals a defect in the adjudicative phase at the end of the child protective proceeding (in an appeal from an order terminating parental rights) is "collaterally" attacking that very same child protective proceeding. But that holding failed to recognize that "[a] child protective proceeding is 'a single continuous proceeding' " that begins with a petition, proceeds to an adjudication, and—unless the family has been reunified—ends with a determination of whether a respondent's parental rights will be terminated. *In re Hudson*, 483 Mich 928, 935 (CORRIGAN, J., concurring), quoting *In re LaFlure*, 48 Mich App 377, 391; 210 NW2d 482 (1973). [*Ferranti*, slip op at 16.]

In *Ferranti*, slip op at 3-4, the circuit court did not simply fail to advise the respondents of their right to appeal the assumption of jurisdiction; the court completely failed to advise the respondents of the rights they waived by entering a plea and the consequences of their plea.

-2-

After overruling *Hatcher*, the Supreme Court did not automatically vacate the circuit court's adjudicative order based on the court's failure to advise the respondents of their appellate rights. Instead, the Court considered the merits of the respondents' other appellate challenges to the plea-taking process. *Ferranti*, slip op at 22-23. Ultimately, the Supreme Court found error warranting relief because the failure to advise the respondents of the rights waived and other plea consequences rendered their pleas unknowing, involuntary, and made without understanding and violated their right to due process of law. *Id*. at 23-24.

The Supreme Court noted in *Ferranti*, slip op at 3-4 n 1, that it was amending MCR 3.971 effective on the release date of its opinion. The current child protective proceeding was initiated in 2014 and respondent's parental rights were terminated in 2016. At that time, MCR 3.971 provided in relevant part:

> **(B) Advice of Rights and Possible Disposition.** Before accepting a plea of admission or plea of no contest, the court must advise the respondent on the record or in a writing that is made a part of the file:
>
> (1) of the allegations in the petition;
>
> (2) of the right to an attorney, if respondent is without an attorney;
>
> (3) that, if the court accepts the plea, the respondent will give up the rights to
>
> > (a) trial by a judge or trial by a jury,
> >
> > (b) have the petitioner prove the allegations in the petition by a preponderance of the evidence,
> >
> > (c) have witnesses against the respondent appear and testify under oath at the trial,
> >
> > (d) cross-examine witnesses, and
> >
> > (e) have the court subpoena any witnesses the respondent believes could give testimony in the respondent's favor;
>
> (4) of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent.

The relevant provisions of the court rule now provide:

> **(B) Advice of Rights and Possible Disposition.** Before accepting a plea of admission or plea of no contest, the court must advise the respondent on the record or in a writing that is made a part of the file:
>
> (1) of the allegations in the petition;
>
> (2) of the right to an attorney, if respondent is without an attorney;

(3) that, if the court accepts the plea, the respondent will give up the rights to

    (a) trial by a judge or trial by a jury,

    (b) have the petitioner prove the allegations in the petition by a preponderance of the evidence,

    (c) have witnesses against the respondent appear and testify under oath at the trial,

    (d) cross-examine witnesses, and

    (e) have the court subpoena any witnesses the respondent believes could give testimony in the respondent's favor;

(4) of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent.

(5) if parental rights are subsequently terminated, the obligation to support the child will continue until a court of competent jurisdiction modifies or terminates the obligation, an order of adoption is entered, or the child is emancipated by operation of law. Failure to provide required notice under this subsection does not affect the obligation imposed by law or otherwise establish a remedy or cause of action on behalf of the parent;

(6) *that appellate review is available to challenge a court's initial order of disposition following adjudication, and such a challenge can include any issues leading to the disposition, including any errors in the adjudicatory process*;

(7) that an indigent respondent is entitled to appointment of an attorney to represent the respondent on appeal of the initial dispositional order and to preparation of relevant transcripts; and

(8) *the respondent may be barred from challenging the assumption of jurisdiction in an appeal from the order terminating parental rights if they do not timely file an appeal of the initial dispositional order* under MCR 3.993(A)(1), 3.993(A)(2), or a delayed appeal under MCR 3.993(C).

**(C) Right to Appellate Review.** The respondent may challenge the assumption of jurisdiction in an appeal from the order terminating respondent's parental rights if the respondent's parental rights are terminated at the initial dispositional hearing pursuant to MCR 3.977(E). In addition, *the respondent may challenge the assumption of jurisdiction in an appeal from the order terminating respondent's parental rights if the court fails to properly advise the respondent of their right to appeal pursuant to subrule (B)(6)-(8)*. [MCR 3.971, as amended effective June 12, 2019 (emphasis added).]

With one hand the Supreme Court giveth and with the other it taketh away. Essentially, the Supreme Court held in *Ferranti* that a parent may challenge an adjudicative order even following termination, but then amended the court rules to limit that right to situations where the lower court fails to advise the parent of his or her right to appeal the adjudication following the initial dispositional order. The following can be taken from *Ferranti* and the court rule amendment:

- A parent generally must appeal the order taking jurisdiction following the court's first dispositional order thereafter.

- Relevant to this case, a parent may appeal the jurisdictional order following termination if the court failed to advise the parent of his or her right to appeal the assumption of jurisdiction following the initial dispositional order.[1]

Following its resolution of *Ferranti* and the amendment of the court rules, the Supreme Court vacated *Noffsinger I* in its entirety and remanded to this Court "for reconsideration in light of *Ferranti.*" *In re Noffsinger*, ___ Mich ___ (Docket No. 154999, entered August 2, 2019).

III. GROUNDS FOR JURISDICTION

Regardless of whether we apply *Ferranti* or the amended court rule, respondent-father now has the right to appeal the assumption of jurisdiction. Pursuant to *Ferranti*, a parent may appeal an adjudicative order even following termination. And according to the newly amended court rule, respondent has the right to appeal errors in the adjudicative phase following termination because the circuit court failed to advise him of his right to appeal following the initial dispositional order. But contrary to respondent's implication and consistent with *Ferranti*, the failure to advise respondent of his appellate rights does not lead to automatic vacation of the assumption of jurisdiction.

In his original appellate brief, respondent challenged the sufficiency of the evidence supporting the assumption of jurisdiction. Specifically, respondent asserted, "The trial court did not properly adjudicate Father because the facts he admitted are not sufficient to establish jurisdiction as there was no indication the facts pled to affected his child. His four-paragraph plea . . . was akin to admitting that Monday follows Sunday with the court assuming jurisdiction based on that admission." Respondent continues to challenge the evidentiary support for the adjudicative order.

In the plea agreement, respondent admitted that (1) his parental rights to three older children were terminated in a previous child protective proceeding, (2) a substance abuse assessment had been conducted, respondent met the criteria for alcohol dependence, and he was "not currently receiving any treatment or participating in any abstinence support," and (3)

---

[1] The parent may also appeal the jurisdictional order following termination if termination was sought at the initial dispositional hearing.

respondent "was convicted by plea of Domestic Violence – 2nd Habitual Offender" for assaulting AN's mother.

> To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists. Jurisdiction must be established by a preponderance of the evidence. We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact. [*In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004) (citations omitted).]

Relevant to this appeal, the statutory grounds for taking jurisdiction over a child are found in MCL 712A.2(b):

> Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

> \* \* \*

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. . . .

"Neglect" under both provisions is defined consistent with MCL 722.602, which at the time of these proceedings provided, " 'Neglect' means harm to a child's health or welfare by a person responsible for the child's health or welfare which occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care."[2]

Jurisdiction was properly assumed under MCL 712A.2(b)(1) because AN's placement with respondent would subject her "to a substantial risk of harm to . . . her mental well-being," and under subsection (b)(2) because respondent's home was "an unfit place for [AN] to live" due to respondent's "cruelty, drunkenness, criminality, or depravity."

---

[2] This definition was amended by 2018 PA 60, effective June 12, 2018, to provide:

> "Neglect" means harm to a child's health or welfare by a person responsible for the child's health or welfare that occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care.

Respondent makes much of the fact that his plea did not tie his alcoholism and history of domestic violence to any specific harm directly incurred by AN. However, the plain language of MCL 712A.2(b)(1) and (2) clearly refers to the outcome of respondent's conduct. Thus, it excludes being a victim of someone else's conduct. See *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011). Nevertheless, it is significant that the Legislature included "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child," MCL 722.23(k), as an explicit factor to consider when resolving custody disputes. This recognizes both that committing domestic violence in the home—even against persons other than the child—is harmful to children, and that it matters which party was the perpetrator. Respondent's history of committing domestic violence beyond just the 2009 incident for which he was convicted, and his clear persistence in aggressive and threatening conduct despite the availability of services, shows that he poses a substantial risk of harm to AN's mental well-being and that his home would be an unfit place for AN to live. Furthermore, leaving a child in the sole custody of a parent who abuses alcohol and refuses to seek treatment creates the danger that the parent will drive while intoxicated with the child or be regularly unable to safely care for the child due to inebriation.

The trial court correctly concluded that living with a parent tenaciously prone to violence and unwilling to address his substance abuse issue is harmful to a child's mental well-being. On this record, we cannot find that the evidence preponderates against the circuit court's assumption of jurisdiction. We discern no ground to set that decision aside.

## IV. TERMINATION DECISION

In his original appeal, respondent also challenged the evidentiary support for the statutory grounds underlying the circuit court's termination decision and contended that termination of his parental rights was not in AN's best interests. In *Noffsinger I*, slip op at 11-13, we rejected those claims. We reaffirm our reasoning in *Noffsinger I* and adopt it in full for purposes of this opinion on remand.

We affirm.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra